Nichols, Judge,
concurring and dissenting:
"The laws of attorney-client, work product, and executive privilege have flourished and spread as the Virginia creeper or bamboo does in Virginia, or poison ivy on Cape Cod. It is time to look where they are going and draw proper limits. Here we have a variety of documents culled from official files. The trial judge has invoked the doctrine of necessity in some instances where privilege admittedly exists. I agree with the court as to all but four documents. I am not going to state views applicable to individual items, since this I believe would accentuate the evils I see inherent in this business. I am going instead to state some general principles I believe the court has not properly applied.
"1. Mutilation. I cannot too strongly protest against the practice, except in case of plain necessity, of mutilating documents. A few words taken out of context are always misleading. The evils which proponents of privilege fear will scarcely ever arise from responsible counsel being allowed, in discovery, just to examine and copy an entire file. They will arise from use of discovered documents in depositions taken from authors or recipients, or testimony at trial. A mutilated document will often mislead counsel who is using it, and be unfair to the witness being questioned upon it. In some instances mutilation will be appropriate where evidence necessary to avoid miscarriage of justice is cheek by jowl with prejudicial irrelevancies such as abortive settlement negotiations. There is entirely too much mutilation in the court’s instant order, though some of it I agree with. Most of the time a document assumes a general character, privileged or not, necessary or not, and separate analysis of each word or sentence does more harm than good.
*478 "2. Lawyer-client and work privilege. In the context of this case, lawyers in the Department of Justice are attorneys for executive departments or officials, and the latter are clients of such attorneys. Lawyers in executive branches other than Justice are attorneys vis-a-vis their own departments, clients vis-a-vis Justice. I think interchange between lawyers and clients, thus defined, that relates to litigation, ongoing, anticipated, or merely feared, are properly to be seen as privileged. It seems absurd to me to whittle down the generality of the foregoing with technicalities, such as that the work-product exemption does not apply in a litigation different from the litigation for which the work was done, or that there is no expectation of privacy, and therefore no privilege, if the client submits a statement to the attorney expecting the attorney to submit it to the court. In my view, in the latter case, the statement is privileged unless and until the attorney actually has passed it on to the court. Until he does, he might advise the client to forget it. Plaintiffs counsel in this case should take note of the precedents that are set for exposure of future communications between him and his clients.
"On the other hand, to my mind communications prepared by attorneys, in the nature of briefs, that pass from one great department of the government to another to persuade the latter of the rightness of the former’s policies or views, are not work-product or attorney-client material. Work-product is of the nature of interim material, to be used as intended at a future date; in case of litigation, when the litigation is tried, briefed, and argued. There are numerous cases where one agency sits in judgment on parts of the program of another. Thus an agency, say Agriculture, might need the permission of the State Department to station an attache at a United States embassy, to report and consult on foreign agriculture. It might need to persuade the Labor Department that its method of paying overtime to employees did not violate the Fair Labor Standards Act. Letters to the General Accounting Office supporting expenditures or opposing claims, also come to mind. In such cases a brief to defend the agency’s position is after being presented not work-product and does not pass between attorney and client. In some instances the lawyer will write for an executive’s signature, and in *479 others he will sign himself. In the former instance, the document is work-product until the executive signs it. A document the executive refused to sign would remain work-product. If the lawyer is himself the signing officer, it is work-product on his desk in draft form, and ceases to be such when he signs his name.
"3. Executive privilege. In my view this exists so that a President, or the Secretary of a Department, may communicate in confidence with individuals who are his advisers; he or they should not be embarrassed afterwards if he fails to follow their advice, nor should they be called to account for advice that was followed and turned out mistaken. That such advice should be off the record, with respect to litigation, is in a sense a management rule for fixing responsibility where, and only where, it belongs. It seems to me that, contrariwise, and excluding military and diplomatic secrecy, the advice of a great executive department to the President or his OMB should be on the record if it relates to a matter within the department’s official cognizance. Certainly this can never embarrass an individual adviser, the case the privilege was meant to guard against. One knows the department has given advice, as it was its duty to do. To conceal what the advice was is in the first'place unlikely to be effective, secondly is not fair, and thirdly, does not fix responsibility properly. In the case of a budget request ordered cut by the President before being transmitted to Congress, Congress can easily learn by asking, what the original request was. So should the courts.
"4. Necessity. If the document is privileged, discovery should be denied unless to do so would threaten a miscarriage of justice. I think we tend to confuse necessity with relevance. This is easy to do as we do not really know the plaintiffs case by heart and its counsel, who does, must advise us without knowledge of the documents he is talking about. We tend to give the discovering party several strings to his bow, just to be sure. Necessity becomes an impairment of privilege, more or less according to the super-rational intuition of the court, and it defies the establishment of rules and guidelines such as conclusions of courts normally evolve into.
"I concur in the operating part of the order except in four instances, but do not join in the observations that precede.”